**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RUTH E. PRATT,

                                   Plaintiff,

         - v -                                              No. 06-CV-551
                                                              (LEK/DRH)

MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

                                   Defendant.


**APPEARANCES:**                              **OF COUNSEL:**

LEKKI, HILL, FISCHER & DUPREY, P.C.           PAUL M. FISCHER, ESQ.
Attorney for Plaintiff
21 Court Street
Post Office Box 469
Canton, New York 13617

HON. GLENN T. SUDDABY                         SUZANNE M. HAYNES, ESQ.
United States Attorney for the                Special Assistant U.S. Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**United States Magistrate Judge**


**REPORT-RECOMMENDATION and ORDER**[2]

         Plaintiff Ruth E. Pratt ("Pratt") brought this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner")

denying her application for benefits under the Social Security Act.  Pratt moves for a

_____

         [1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007.
Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted as the named
defendant in this action for JoAnne B. Barnhart, the former Commissioner.

         [2]The matter was referred to the undersigned for Report and Recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

finding of disability and the Commissioner cross-moves for a judgment on the pleadings.

Docket Nos. 5, 7.  For the reasons which follow, it is recommended that the

Commissioner's decision be vacated and remanded for further proceedings.


## I.  Procedural History

On September 14, 2004, Pratt filed for disability insurance benefits pursuant to the

Social Security Act, 42 U.S.C. § 401 <u>et seq</u>.  T. 47-49.[3]  The application was initially

denied.  T. 28-32.  Pratt requested a hearing before an administrative law judge ("ALJ"),

which was held before ALJ Carl E. Stephan on June 27, 2005.  T. 33, 158-78.  In a

decision dated July 18, 2005, the ALJ held that Pratt was not entitled to disability benefits.

T. 17-25.  Pratt filed a request for review with the Appeals Council.  T. 8-10.  On March 23,

2006, the Appeals Council denied Pratt's request, thus making the ALJ's findings the final

decision of the Commissioner.  T. 3-5.  This action followed.


## II.  Contentions

Pratt contends that the ALJ erred when he failed properly to  find her condition met

the applicable listing, apply the treating physician's rule, determine her residual functional

capacity (RFC), procure the testimony of a vocational expert, utilize the applicable

guidelines, and evaluate her subjective complaints of pain.  The Commissioner contends

that there was substantial evidence to support the determination that Pratt was not

_____

[3]"T." followed by a number refers to the pages of the administrative transcript filed
by the Commissioner.  Docket No. 4.

disabled.

## III.  Facts

Pratt is currently fifty-two years old and has an Associate's Degree in liberal arts.  T. 47, 62, 162.  Pratt previously worked as a packer in a manufacturing plant.  T. 58, 163. Pratt alleges that she became disabled on May 20, 2003 due to degenerative disc disease.  T. 47, 57, 163.

## IV.  Standard of Review

### A.  Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A) (2003).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] w

*Id.* at §§ 423(d)(2)(A) & 1382c(a)(3)(B) (2003).

The Commissioner uses a five step process, set forth in 20 C.F.R. §§ 404.1520 & 416.920, to evaluate disability insurance benefits and SSI claims:

> First, the [Commissioner] considers whether the claimant is currently engaged

in substantial gainful activity.  If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.  Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520 & 416.920 (2003).

A plaintiff has the burden of establishing disability at the first four steps.  Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).  However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform.  Id.

### B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Shaw, 221 F.3d at 131 (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  Richardson v.

*-4-*

Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197,

229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with

sufficient specificity to allow a court to determine whether substantial evidence supports

the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y.

Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court,

however, cannot substitute its interpretation of the administrative record for that of the

Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v.

Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by

substantial evidence, it is conclusive.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).


**V.  Discussion**

**A.  Medical Evidence**

On May 22, 2003, Pratt complained to Nurse Practitioner Nancy Merkley about pain

in her lower back radiating down both legs.  T. 85.  Merkley found tenderness in the

scapular region of Pratt's spine on the right and diagnosed her with muscle spasms and

degenerative disc disease.  Id.  An x-ray of Pratt's lumbar spine revealed moderate diffuse

osteopenia[4] and degenerative changes with diminished disc height at L5-S1 with no

---

[4]Osteopenia is "[a] condition of bone in which there is a generalized reduction in
bone mass that is less severe than that in osteoporosis, caused by the resorption of bone
at a rate that exceeds bone synthesis." THE AMERICAN HERITAGE MED. DICTIONARY 584
(Revised ed. 2007).

spondylolysis,[5] spondylolisthesis, fractures, or sublaxations.  T. 85, 87.  A Magnetic Resonance Imaging ("MRI") was also taken of the cervical spine that showed mild to moderate posterior disc bulge/osteophyte complex at C5-6 and C6-7 with no signs of spinal stenosis.[6]  T. 88.  It further showed uncovertebral spurring at C5-6 with encroachment of the right neural foramen and exiting nerve root and encroachment of a right neural foramen at C6-7.  Id.  On May 30, 2003, Pratt complained of neck pain and was referred to a neurosurgeon, Dr. John Krawchenko.  T. 86.

     In June 2003, Merkley noted that Pratt was taking Darvocet and attending physical therapy.  T. 90.  She also noted that Pratt continued to complain of neck pain and then prescribed Flexeril, Zoloft, and Darvocet.  Id.  On July 2, 2003, Dr. Krawchenko examined Pratt.  T. 102-03.  He found diffuse tenderness over her cervical spine with pain on flexion and extension and mild soreness of the lumbar spine and paraspinal muscles with fairly good range of movement of her back.  Id.  Dr. Krawchenko stated that straight-leg raising was to 90° that gave Pratt increased back pain but no leg pain, the motor examination showed normal tone, there was no spasticity or gross atrophy, leg strengths and gait were normal, and the sensory examination revealed patchy areas of slightly decreased and touch sensation in the right arm and hand.  T. 103. A cervical collar was prescribed, Pratt was instructed to continue her medications, and the Pain Clinic was recommended.  Id. Dr. Krawcheko opined that Pratt was disabled from work.  T. 102-03.

     On September 2, 2003, Dr. Krawchenko noted that Pratt had less arm and neck

----

[5]Spondylolysis is the "dissolution of a vertebra . . . ."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1563 (28th ed. 1994) [hereinafter "DORLAND'S"].

[6]Stenosis is the "narrowing or stricture of a duct or canal."  DORLAND'S 1576.

pain and had declined to attend a follow-up appointment at the Pain Clinic.  T. 104.  He found that her strength was normal in both arms and hands, she had good touch sensation bilaterally, and there was tenderness over the lumbar and paraspinal muscles with limited range of motion.  Id.  Dr. Krawchenko also stated that straight-leg raising caused pain, she had good strength in her legs and feet, and gait was slow but steady.  Id. He recommended that she attend therapy for her back, although it was not needed for her neck pain any longer, and that she should restrict her activities.  Id.  Dr. Krawchenko noted that she had difficulty standing in one position and that bending and lifting increased her back pain.  Id.  On September 22, 2003, an MRI taken of the lumbar spine revealed a diffuse disc bulge at the L1-2 and L4-5 levels with minimal sac compression and a diffuse disc bulge at the L5-S1 level that abutted but did not compress the thecal sac.  T. 106.

On October 22, 2003, Dr. Krawcheko examined Pratt and reported that straight-leg raising on the left at 80° gave her pain but was less so on the right at 90°.  T. 107.  He also stated that there was tenderness over the left lumbar spine, paraspinal muscles, cervical muscles, and trapezius muscle, range of motion was limited, prolonged sitting more than ten minutes and walking several blocks increased her pain, there were patchy areas of decreased pin sensation in the left thigh, and she had good strength in both arms and hands.  Id.  He concluded that Pratt was totally disabled.  Id.

On February 12, 2004, Dr. Krawchenko noted that Pratt felt better, she was not having any severe pain, and prolonged bending, standing, walking, lifting more than ten pounds, turning, twisting, and doing repetitive work gave her pain.  T. 109.  He found that she had good strength in both legs and feet, she had good sensation to touch and pin, there was tenderness over the lumbar and cervical spine, range of motion was limited, and

straight-leg raising gave her back pain but no significant sciatic pain down the legs.  Id.

Dr. Krawchenko opined that surgery was not needed, gentle exercising was

recommended, and she remained disabled from work.  However, if she improved, she

could return to work.  Id.  On July 8, 2004, Pratt complained of back and neck pain to

Merkley and requested that disability paperwork be completed.  T. 101.

On November 3, 2004, Dr. Gerald R. Amatucci examined Pratt.  T. 110-12.  Dr.

Amatucci found that Pratt's gait and station were normal, she could heel-and-toe walk

without difficulty, she could bend and put her sneakers on by herself, she could rise from

her chair without difficulty, and she arose from the examination table with only a slight

hesitation.  T. 112.  He reported that Pratt had full range of motion of her cervical and

lumbosacral spine, shoulders, wrists, hands, hips, knees, and ankles bilaterally  T. 111-12.

Dr. Amatucci further stated that Pratt had no areas of tenderness or spasm, she could

bend from the waist beyond 90°, straight-leg raising was negative at 80° bilaterally, grip

and motor strength were 5/5, there was no effusion or muscle atrophy, deep tendon

reflexes were equal, and sensation was intact throughout.  Id.  Dr. Amatucci concluded

that the objective findings showed mild symptoms relating to Pratt's history of

degenerative disc disease and that while strenuous physical activity might be difficult,

sedentary activity did not seem to be a particular problem.  Id.

On November 4, 2004, a state agency consultative examiner, Dr. William Kimball,

psychiatrically evaluated Pratt.  T. 113-17.  He noted that Pratt had driven thirty-five to

forty miles by herself for the examination, she loved to bake, she worked with younger

children at the church and was very involved in church activities, and she spent much time

with her friends.  T. 113-14.  Dr. Kimball found that Pratt's responses were relevant and

appropriate, there were no signs of delusions or hallucinations, affect was positive, she was not suicidal, she was oriented, and insight and judgment were good.  T. 115-16.  He stated that her anxiety did not appear to inhibit her ability to work and she was able to participate in family activities, cook, clean, do laundry, and food shop, although she needed time to rest.  T. 116.  Dr. Kimball diagnosed Pratt with generalized anxiety and gave her a Global Assessment of Functioning ("GAF") score of 65, which indicated the existence of mild symptoms or difficulty in social, occupational, or school functioning but generally meant that the individual was functioning well and had meaningful interpersonal relationships.[7]  Id.  He concluded that Pratt did not have severe psychiatric problems and her condition was controlled by medication.  Id.

On November 26, 2004, disability analyst G. Cosale completed a physical RFC assessment and found that Pratt could lift up to twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour day, stand and walk for six hours in an eight-hour day, and occasionally perform postural activities.  T. 119-20.  On November 29, 2004, Dr. Abdul Hameed, a state agency medical consultant, psychiatrically evaluated Pratt and found that she did not have a severe impairment.  T. 124.

In January 2005, Dr. Maria Jereva examined Pratt and stated that Pratt had full range of motion of her back with mild pain in flexion and extension, there was mild tenderness in the lower back, deep tendon reflexes were equal, and strength was equal bilaterally.  T. 148.  Pratt was told to continue her medication and do daily exercises.  Id.

_____

[7]The GAF scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health.  DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (Am. Psychiatric Ass'n, 4th ed. 2000) [hereinafter "DSM-IV-TR"].

On May 26, 2005, Dr. Jereva opined that Pratt could not continue performing her job due to her condition.  T. 149.  The same day, Dr. Jereva completed a medical opinion regarding Pratt's ability to do work-related activities.  T. 155-57.  She opined that Pratt could lift up to ten pounds occasionally and less than ten pounds frequently, sit for six hours in an eight-hour day, and stand and walk for two hours in an eight-hour day.  T. 155. However, Dr. Jereva stated that Pratt would have to alternate between sitting and standing or walking and lie down on occasion.  Id.  Dr. Jereva also stated that Pratt could occasionally crouch and climb stairs but never twist, stoop, or climb ladders and that she would have trouble reaching, handling, and pushing and pulling.  T. 156.  She reported that Pratt's condition would cause her to be absent more than three times per month, her pain was incapacitating, physical activity would increase her pain to an extent where medication and bed rest would be necessary, and her medication impacted her to the extent that she would be unable to function at a productive level.  T. 156-57.

### B.  Listing 1.04(A)

Pratt contends that the ALJ failed to find that her condition met the requirements of Listing 1.04(A), which would have compelled a finding of disability.  The Commissioner contends that the ALJ properly found that Pratt's condition did not meet Listing 1.04(A).

As previously stated, at step three of the sequential disability evaluation process, the ALJ must determine whether the claimant's conditions meet or equal the requirements for any impairment listed in Part 404 of the Social Security Regulations, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  "The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to

prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525(a). If a claimant's

impairment or combination of impairments meets or equals a listed impairment, the

evaluation process is concluded and the claimant is considered disabled without

considering the claimant's age, education, or work experience. 20 C.F.R. §

404.1520(a)(4)(iii).

 The burden is on the plaintiff to present medical findings which show that his or her

impairments match a listing or are equal in severity to a listed impairment. Zwick v. Apfel,

No. 97 Civ. 5140(JGK), 1998 WL 426800, at *6 (S.D.N.Y. July 27, 1998). In order to show

that an impairment matches a listing, the claimant must show that his or her impairment

meets all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990);

20 C.F.R. § 404.1525(d). If a claimant's impairment "manifests only some of those

criteria, no matter how severely," such impairment does not qualify. Sullivan, 493 U.S. at

530. To make this showing, the claimant must present medical findings equal in severity

to all requirements which are supported by medically acceptable clinical and laboratory

diagnostic techniques. 20 C.F.R. § 404.1526(b). Any abnormal physical findings "must be

shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P,

App. 1 § 1.00.(B). Furthermore, the medical reports should reflect physical limitations

based upon actual observations and not just the claimant's subjective complaints. Id.

 With regard to disorders of the spine, Listing 1.04(A) states that the disorder,

resulting in compromise of a nerve root, including the cauda equina, or the spinal cord

must be accompanied by:

> [e]vidence of nerve root compression characterized by neuro-
> anatomic distribution of pain, limitation of motion of the spine,
> motor loss (atrophy with associated muscle weakness or muscle

> weakness) accompanied by sensory or reflex loss and, if there is
> involvement of the lower back, positive straight-leg raising test
> (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A) (2005).

Here, although the ALJ did not specifically refer to Listing 1.04(A), the ALJ found that Pratt did not "meet or medically equal, either singly or in combination [] one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." T. 18. However, in making the determination, the ALJ discussed the MRIs taken of Pratt's lumbar and cervical spine. Id. The May 2003 x-ray of Pratt's lumbar spine showed that the bones were moderately osteopenic and there were degenerative changes with diminished disc height at L5-S1 but no spondylolysis or spondylolisthesis and no fractures or sublaxations. T. 87. The x-ray did not reveal that there was nerve root compression. Id. A subsequent MRI of the lumbar spine in September 2003 showed that the L1-L5 nerves exited the neural foramina without compression. T. 105-06. Thus, Pratt did not meet Listing 1.04(A) for her lumbar spine as there was no nerve root compression.

Furthermore, although Pratt argues that she had neuro-anatomic distribution of pain, limited range of motion, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising, substantial evidence supports a finding that Pratt did not meet or equal the Listing. In July 2003, Dr. Krawchenko stated that Pratt had good range of movement of her back, straight-leg raising was negative to 90°, the motor examination showed normal tone, there was no spasticity or gross atrophy, and leg strengths and gait were normal. T. 103. In September 2003, Dr. Krawchenko opined that Pratt had good strength in her legs and feet and gait was slow but steady. T. 104. In February 2004, Dr. Krawchenko found that she had fairly good strength in both legs and feet, she had good

sensation to touch and pin, and straight-leg raising was essentially negative.  T. 109.  In

November 2004, Dr. Amatucci reported that Pratt's gait and station were normal, she

could heel-and-toe walk without difficulty, there was full range of motion of her

lumbosacral spine, hips, knees, and ankles bilaterally, there were no areas of tenderness

or spasm, straight-leg raising was negative, there was no muscle atrophy, deep tendon

reflexes were equal, and sensation was intact throughout.  T. 111-12.  Lastly, in January

2005, Dr. Jereva found that Pratt had full range of motion in her back, deep tendon

reflexes were equal, and strength was equal bilaterally.  T. 148.  Based on this evidence,

the ALJ did not err in finding that Pratt did not meet the Listing for her lumbar spine

condition.

     In regard to Pratt's cervical spine, an MRI in May 2003 showed that the underlying

cord was normal and there was encroachment of the right neural foramen, which Dr.

Krawchenko stated was consistent with cervical radiculopathy.  T. 88.  The MRI did not

specifically reveal that there was nerve root compression in the cervical spine.  Id.

Nevertheless, even if the encroachment constituted nerve root compression, Pratt did not

meet the remaining conditions under Listing 1.04(A).  Dr. Krawchenko found diffuse

tenderness and limited motion in her cervical spine in July 2003, but in September 2003,

Pratt stated that she had less neck pain and she declined to attend an appointment at the

Pain Clinic.  T. 103-04.  Also in September 2003, Dr. Krawchenko found that Pratt had

normal strength in both arms and hands and she had good touch sensation bilaterally.  T.

104.  He even stated that physical therapy was no longer needed for her neck.  Id.  In

October 2003, Dr. Krawchenko also stated that Pratt had good strength in both arms and

hands.  T. 107.  In November 2004, Dr. Amatucci found that Pratt had full range of motion

in her cervical spine, shoulders, wrists, and hands, there was no tenderness or spasm,

grip and motor strength were 5/5, sensation was intact throughout, and deep tendon

reflexes were equal.  T. 111-12.  Thus, substantial evidence existed to support the ALJ's

determination regarding Pratt's cervical spine condition.

Accordingly, it is recommended that the Commissioner's findings on this ground be

affirmed.


**C.  Treating Physician's Rule**

Pratt contends that the ALJ did not give proper weight to the opinions of her treating

physicians, Drs. Krawchenko and Jereva, and improperly relied upon the opinion of Dr.

Amatucci, who only examined her on one occasion.

When evaluating a claim seeking disability benefits, factors to be considered

include objective medical facts, clinical findings, the treating physician's diagnoses,

subjective evidence of disability, and pain related by the claimant.  Harris v. R.R. Ret. Bd.,

948 F.2d 123, 126 (2d Cir. 1991).  Generally, more weight is given to a treating source.

Under the regulations, a treating source's opinion is entitled to controlling weight if well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is

consistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2);

Shaw, 221 F.3d at 134.  Before a treating physician's opinion can be discounted, the ALJ

must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight

to accord the physician's opinion: "(I) the frequency of examination and the length, nature,

and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the

opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503.  If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).  Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. § 404.1527(e).

### 1. Dr. Krawchenko

Dr. Krawchenko repeatedly stated that Pratt's condition rendered her totally disabled.  T. 102, 103, 107, 109.  Despite these findings, the ALJ determined not to accord Dr. Krawchenko's opinion controlling weight because his conclusion of total disability was not supported by objective medical evidence in the record or Pratt's testimony evaluating her level of pain and describing her activities of daily living.  T. 20-23.

First, despite Pratt's argument to the contrary, the ALJ was not obligated to give Dr. Krawchenko's opinion controlling weight as the decision whether a claimant is disabled is reserved for the Commissioner.  Snell, 177 F.3d at 134; 20 C.F.R. § 404.1527(e).

Second, although Pratt was deemed disabled by Dr. Krawchenko, the diagnostic testing and his own medical evaluations indicate otherwise.  The ALJ echoes the same MRI conclusions as Dr. Krawchenko that while Pratt suffered from disc bulges, there was no indication of disc herniation.  T. 109.  Additionally, the radiology results indicate, as the ALJ properly states, that Pratt was not suffering from stenosis, herniation, spondylolysis, or spondylolisthesis.  T. 87, 88, 105.  Thus, despite Dr. Krawchenko's conclusory

*-15-*

assessment, Pratt was only experiencing degenerative disc changes.  These results substantially support the assessment completed by Dr. Amatucci and run directly contrary to the conclusion that Pratt is totally disabled.

Additionally, throughout the progression of their treatment relationship, Dr. Krawchenko noted the improvements in Pratt's pain and stiffness.  T. 104, 109.  Dr. Krawchenko stated that Pratt had good range of movement in her back, straight-leg raising was negative, there was no spasticity or gross atrophy, and leg strength and gait were normal.  T. 103.  Additionally on two other occasions, Dr. Krawchenko opined that Pratt had good strength in her legs, feet, arms, and hands, gait was slow but steady, and she had good touch sensation bilaterally.  T. 104, 109.  These evaluations of Pratt's functional limitations were echoed by Dr. Amatucci, who also had negative findings in his examination of Pratt.  T. 111-12.  Dr. Krawchenko also supported Pratt's decision to decline follow-up and reconsideration of services at the pain management clinic because she was not suffering from severe pain and the clinic's intervention was unnecessary.  T. 104, 109.  Moreover, Dr. Krawchenko improperly compared disability to rest and therapy as modalities for pursuing conservative treatment of Pratt's back injury.  T. 107.  This assessment is neither binding nor representative of the requisite severity required for benefits.

Lastly, Pratt's own admissions of her lack of pain and ability to perform her daily activities run contrary to Dr. Krawchenko's assessment of her disability.  As discussed above, Pratt commented multiple times on her decreased pain, numbness, and stiffness as well as the fact that the pain management clinic was unnecessary for her current level of pain.  Pratt stated that she took Ibuprofen occasionally and Darvocet only when the pain

*-16-*

was intense.  T. 165.  Pratt testified that she had not taken Darvocet for weeks and only took muscle relaxers once a month.  T. 165-66.  She also noted that the only side effect of the medications was that they made her tired, but she only napped on occasion and not everyday.  Id.  Additionally, Pratt stated that she shopped for groceries, cooked, did laundry, drove, and cared for her personal needs.  T. 162, 168-670.  Pratt also told Dr. Kimball that she was able to drive thirty-five to forty miles by herself, she worked with younger children at her church, she was very involved in church activities, and she spent much time with her friends.  T. 113-14, 116.

Based upon the record and Pratt's testimony, the ALJ did not err in according Dr. Krawchenko's assessment little weight.  Therefore, it is recommended that the Commissioner's finding in this regard be affirmed.


### 2.  Dr. Jereva

As stated previously, on May 26, 2005, Dr. Jereva completed a medical opinion regarding Pratt's ability to do work-related activities.  T. 155-57.  She opined that Pratt could lift up to ten pounds occasionally and less than ten pounds frequently, sit for six hours in an eight-hour day, and stand and walk for two hours in an eight-hour day.  T. 155.  However, Pratt would need to alternate between sitting and standing or walking and lie down on occasion.  Id.  Dr. Jereva further stated that Pratt could occasionally crouch and climb stairs but never twist, stoop, or climb ladders and that she would experience trouble reaching, handling, and pushing or pulling.  T. 156.  Dr. Jereva reported that Pratt's condition would cause her to be absent from work more than three times per month, her pain was incapacitating, physical activity would increase her pain to an extent where

medication and bed rest would be necessary, and her medication impacted her to the extent that she would be unable to function at a productive level.  T. 156-57.

        The ALJ accorded this assessment little weight because he concluded that it was inconsistent with the medical record and contrary to Pratt's testimony regarding her abilities.  T. 18.  Prior to making the assessment, Dr. Jereva only examined Pratt on four occasions.  <u>See</u> T. 148-53.  Dr. Jereva made findings regarding Pratt's back condition on only one occasion in January 2005.  T. 148, 151.  At that time, Dr. Jereva stated that Pratt had full range of motion in her back with mild pain in flexion and extension, there was mild tenderness in the lower back, deep tendon reflexes were equal, and strength was equal bilaterally.  T. 148.  These findings do not support the assessment reported.  Moreover, Dr. Jereva's own conclusions within her assessment are inconsistent as she initially made findings that Pratt was essentially capable of sedentary work[8] but then stated that her pain was incapacitating to the extent that medication and bed rest would be necessary and she would be unable to function at a productive level.  This assessment is not only contradicted by the record but Pratt's testimony establishes that the severity described by Dr. Jereva conflicted with the activities she performed in her daily life.

        As discussed above, Pratt's testimony concerning her level of pain and daily activity further supports the ALJ's decision to accord Dr. Jereva's assessment little weight.  Thus, based upon the record and Pratt's testimony, the ALJ did not err.  Therefore, it is

---

        [8]Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

recommended that the Commissioner's finding be affirmed.


## D.  RFC

Pratt contends that substantial evidence does not support the finding that she had

the RFC to do light work that existed in significant numbers in the national economy.  Pratt

further contends that the ALJ should have adduced evidence from a vocational expert that

sufficient jobs existed in the national economy that Pratt was capable of performing rather

than using the Medical Vocational Guidelines ("Grids").

RFC describes what a claimant is capable of doing despite his or her impairments

considering all relevant evidence, which consists of physical limitations, symptoms, and

other limitations which go beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145,

150 (N.D.N.Y. 1999); see 20 C.F.R.  § 404.1545.  "RFC can only be established when

there is substantial evidence of each physical requirement listed in the regulations."  Smith

v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).  In assessing RFC,

the ALJ must make findings specifying what functions the claimant is capable of

performing, not simply making conclusory statements regarding a claimant's capabilities.

Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can

perform his or her past relevant work in the national economy.  New York v. Sullivan, 906

F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. § 404.1545.

Where, as here, a claimant is able to demonstrate that his or her impairments

prevent a return to past relevant work, the burden then shifts to the Commissioner to

prove that a job exists in the national economy which the claimant is capable of

performing.  See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §

404.1560(c).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country." 20 C.F.R. § 404.1566(a) (2003).  The ALJ may apply the Grids or consult a vocational expert.  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan,  168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003).  If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled.  Pratts v Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).

The Grids do not provide the exclusive framework for making a disability determination if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations." Id. at 39 (quoting Bapp v. Bowen, 802 F.2d 601, 604-05 (2d Cir. 1986) (citation omitted)).  Rather, the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform.  Bapp, 802 F.2d at 604-05.  Work capacity is "significantly diminished" if there is a loss of work capacity that narrows the possible range of work available and deprives the claimant of a meaningful employment opportunity.  Id. at 605. Non-exertional impairments include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching."  20 C.F.R. § 404.1569a(c)(1)(vi) (2003).  The applicability of the grids should be considered on a case-by-case basis.  Bapp, 802 F.2d at 605.  However, the "mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Id. at 603.

Here, the ALJ found that Pratt was unable to perform her past relevant work but possessed the RFC to perform a full range of light work.  T. 23-24.  Light work is defined

as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight limitation may be low, a job falls in this category when it requires significant walking or standing, or when it involves "sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b) (2005).

The ALJ used the Grids as a framework to determine that other work existed in the national economy that Pratt could perform.  The ALJ concluded that Pratt "could lift up to ten pounds frequently and twenty pounds occasionally, and sit, stand or walk for six hours each in an eight-hour work day."  T. 23.  In making that determination, the ALJ relied upon the RFC assessment by the disability analyst as well as the findings made by Dr. Amatucci.

The regulations permit the ALJ to rely on the opinions of non-examining sources to override treating sources' opinions as long as they are supported by medical evidence in the record.  See 20 C.F.R. § 404.1527(f); see also Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993).  However, in this case, the disability analyst's RFC assessment, even taken in conjunction with Dr. Amatucci's findings, is not supported by substantial evidence in the record.  Moreover, the disability analyst is not considered an acceptable medical source under the Regulations.  See 20 C.F.R. § 404.1513(a).

The ALJ opined that Pratt had the ability to lift twenty pounds occasionally. Nevertheless, the medical records do not support such a finding.  Pratt stated to Dr. Amatucci that lifting any more than ten to fifteen pounds caused her pain.  T. 110.  Dr. Amatucci also reported that strenuous physical activity would be difficult for Pratt but that she would have no problems with sedentary activity.  T. 112.  This conclusion clearly

conflicts with a determination that Pratt could perform light work.  Moreover, Dr. Jereva

opined that Pratt could lift less than ten pounds frequently.  T. 155.  Thus, the ALJ's

finding in this regard was in error.  Additionally, the disability analyst, upon whom the ALJ

relied, along with Drs. Krawchenko and Jereva, found that Pratt had postural limitations.

T. 104, 120, 156.  However, the ALJ wholly failed to address any of Pratt's postural

limitations.[9]

The ALJ's failure to determine the RFC properly would affect findings made at the

fifth step of the sequential analysis.  The ALJ solely utilized the Grids to determine that

Pratt was not disabled.  However, the Grids cannot be the sole determinant of disability if

a claimant suffered from non-exertional impairments that "significantly limit the range of

work permitted by exertional limitations."  Pratts, 94 F.3d at 39.  Because the ALJ failed to

make such a determination, it is unclear whether the use of the Grids would have been

appropriate or whether the ALJ should have employed a vocational expert to testify.

Accordingly, it is recommended that the Commissioner's determination here be

remanded for further proceedings.

### E.  Subjective Complaints of Pain

Pratt argues that the ALJ's decision not to credit fully her subjective complaints of

disabling pain was in error.

---

[9]Pratt also contends that the evidence did not support the ALJ's finding that she
could sit for six hours in an eight-hour workday.  However, the disability analyst's
assessment is supported by the opinion of Dr. Jereva, who concluded that Pratt could sit
for six hours in an eight-hour workday, although Pratt would need to alternate between
sitting and standing or walking.  T. 119, 155.

The basis for establishing disability includes subjective complaints of pain even where the pain is unsupported by clinical or medical findings provided that the underlying impairment can be "medically ascertained."  20 C.F.R. § 404.1529 (2005); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999).  A finding that a claimant suffered from disabling pain requires medical evidence of a condition that could reasonably produce such pain.  An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence.  20 C.F.R. § 404.1529 (2005); Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Pain is a subjective concept  "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain.  Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  "The ALJ must discuss his resolution of the claimant's credibility regarding pain in a narrative discussion that provides specific reasons for the weight that he assigned to the claimant's statements; he may not merely conclude that the claimant's statements are not credible."  Lewis v. Apfel, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis, 62 F. Supp. 2d at 653.  If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility findings.  Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983).  The ALJ must consider several factors pursuant to 20 C.F.R. § 404.1529(c)(3):

(I)  [The claimant's] daily activities;

(ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;

(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

(vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Here, the ALJ concluded that Pratt's allegations of disabling symptoms and limitations were not totally credible because she was able to engage in a wide range of activities despite her impairment and she was conservatively treated.  T. 22-23.  In support of his conclusion, the ALJ noted that Pratt testified that she could perform daily functions such as shopping for groceries, cooking, doing the laundry, attending church, and driving. T. 23, 162, 168-670.  In fact, Dr. Kimball reported that Pratt was able to do family activities, cook, clean, do laundry, and shop for groceries, although she needed time to rest, and drive thirty-five to forty miles by herself.  T. 113, 116.  He also stated that she worked with younger children at her church, was very involved in church activities, and she spent significant time with her friends.  T. 114.  The ALJ also discussed the factors set forth in 20 C.F.R. § 404.1529(c)(3) and noted that the medical evidence showed

*-24-*

improvement in Pratt's condition.  *See* T. 23, 102-04, 109, 111-14, 116.  Thus, there is

substantial evidence to support the ALJ's conclusion that Pratt's subjective complaints of

pain were not fully credible.[10]

Therefore, it is recommended that the Commissioner's determination on this ground

be affirmed.


## VI.  Remand or Reversal

A reviewing court has the authority to reverse with or without remand. 42 U.S.C. §§

405(g), 1383(c)(3) (2003).  Remand is appropriate where there are gaps in the record or

further development of the evidence is needed.  Curry, 209 F.3d at 124.  Reversal is

appropriate, however, where there is "persuasive proof of disability" in the record and

remand for further evidentiary development would not serve any purpose.  Id.; see also

Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Here, further development of the

record is required.  Accordingly, it is recommended that the decision of the Commissioner

be remanded for further proceedings rather than reversed.

_____

[10]Pratt also argues that the fact that she worked for sixteen years for the same
employer should have been weighed in favor of her credibility.  "A claimant with a good
work record is entitled to substantial credibility when claiming an inability to work because
of a disability."  Brandon v. Bowen, 666 F. Supp. 604, 608 n. 6 (S.D.N.Y. 1987) (quoting
Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)).  However, it is well within the
discretion of the Commissioner to evaluate the credibility of a plaintiff's complaints and
render an independent judgment in light of the medical findings and other evidence.  See
Mimms v. Heckler, 750 F.2d 180, 185-86 (2d Cir. 1984); Social Security Ruling ("SSR")
96-7p, 1996 WL 374186, Titles II and XVI: Evaluation of Symptoms in Disability Claims:
Assessing the Credibility of an Individual's Statements  (S.S.A. 1996).  Here, as discussed
above, the ALJ's determination was supported by substantial evidence despite Pratt's
work history.

## VII.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **REMANDED** for further proceedings as described above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Date:   May 2, 2008
        Albany, New York

_David R. Homer_
United States Magistrate Judge